IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MEADOWS, | ) | CASE NO.  5:18-CV-01087-SL |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| WARDEN ED SHELDON,[1] | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Christopher Meadows ("Meadows" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant

to 28 U.S.C. § 2254.  Meadows is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case *State v. Meadows*, Summit County Court of Common

Pleas Case No. CR-2011-12-3491.  For the following reasons, the undersigned recommends that the

Petition be DISMISSED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state

court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir.

---

[1] The Ohio Department of Rehabilitation and Correction offender search lists Meadows as incarcerated at the Marion Correctional Institution.  OHIO DEPT. OF REHABILITATION AND CORRECTION, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A630279 (last visited Dec. 12, 2019). Lyneal Wainwright is the Warden of Marion Correctional Institution.  OHIO DEPT. OF REHABILITATION AND CORRECTION, https://drc.ohio.gov/mci (last visited Dec. 12, 2019).

2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Meadows's conviction as follows:

> [¶2] On the evening of December 14, 2011, Mr. Meadows, Tramein Walker, Ashley Walker, and two others gathered in the kitchen of Ms. Walker's parent's house on Roselle Avenue in Akron Ohio. According to Ms. Walker, all of the people present were friends or family and they had all known each other for a long time. Everyone sat around the table talking and acting normally.
>
> [¶3] Ms. Walker testified that as it got later, she decided to return to her house, which was across the street. About 15 minutes after she returned home, she was upstairs when she heard yelling coming from outside. She looked out the window briefly and saw Mr. Meadows and Mr. Walker standing facing each other and arguing. At some point thereafter she heard a gunshot, so she ran downstairs. Before she reached the bottom of the stairs, she heard a second gunshot. When she got outside, she saw Mr. Walker lying in the grass and Mr. Meadows running away. Her parents, who had been on the lower level of her house, called 911, but Mr. Walker ended up dying from gunshot wounds to his back and leg.
>
> [¶4] Mr. Meadows testified that, when he left the house around 10:00 p.m., Mr. Walker followed him. Once they got outside, Mr. Walker told Mr. Meadows that he was angry with him. According to Mr. Meadows, he, his older brother Curtis, and Mr. Walker had been good friends. A couple of months earlier, however, someone had killed his brother. Mr. Meadows said that Mr. Walker was angry at him because Mr. Walker thought that he had been socializing with the men who Mr. Walker thought were responsible for his brother's death. According to Mr. Meadows, he has never been friends with those men. Moreover, he maintained, no one knows who killed his brother.
>
> [¶5] Mr. Meadows testified that, when he denied Mr. Walker's allegation, Mr. Walker insisted that it was true. When he denied the allegation again, Mr. Walker grabbed his shirt and punched him in the face. They began "tussling." After a while, they fell to the ground, which is when Mr. Meadows believes Mr. Walker realized that he had a gun in his pants. According to Mr. Meadows, Mr. Walker was behind him and tried to take the gun from his waistband, but he resisted. They began struggling for the gun and that is when it went off. After the gun went off, Mr. Walker felt his back, then started choking Mr. Meadows while continuing to struggle for the gun. When the gun went off again, Mr. Walker stopped moving. Mr. Meadows testified that he got up, grabbed the gun, and ran. An autopsy revealed that Mr. Walker died from exsanguination caused by the gunshot wound to his back.

2

[¶6] The Grand Jury indicted Mr. Meadows for felonious assault and murder. At trial, the court refused to give any lesser-included offense instructions or a self-defense instruction, but it did instruct the jury on accident. The jury found Mr. Meadows guilty of the offenses, and the trial court sentenced him to 15 years to life imprisonment. Mr. Meadows has appealed, assigning four errors.

*State v. Meadows*, No. 26549, 2013 WL 5439847, at *1 (Ohio App. 9th Dist. Sept. 30, 2013).

## II.      Procedural History

### A.      Trial Court Proceedings

On January 5, 2012, a Summit County Grand Jury indicted Meadows on one count of murder in violation of Ohio Rev. Code § 2903.02(A)/(B) and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1)/(A)(2).  (Doc. No. 12-1, Ex. 1.)  Meadows pled not guilty on all counts.  (Doc. No. 12-1, Ex. 2.)

Jury trial commenced on June 11, 2012.  (Doc. No. 12-4.)  On June 15, 2012, the jury found Meadows guilty on both counts. (Doc. No. 12-1, Ex. 3.)  That same day, after merger of the offenses, the trial court sentenced Meadows to serve an aggregate sentence of fifteen years to life, the mandatory term. (Doc. No. 12-1, Ex. 4, 6.)[2]

### B.      Direct Appeal

On July 18, 2012, Meadows, through counsel, filed a timely notice of appeal to the Court of Appeals for the Ninth Appellate District.  (Doc. No. 12-1, Ex. 5.)  In his appellate brief, he raised the following assignments of error:

> I.      Appellant was denied due process and substantially prejudiced by jury instructions which were incomplete due to denials of timely defense requests for jury charges of self-defense and lesser or inferior offenses.

---

[2] The second page of the trial court's journal entry from sentencing at Doc. No. 12-1, Ex. 4 is missing second page.  The missing page can be found at Doc. No. 12-1, Ex. 6, following the appellant brief.

II.     Absent a hearing and expert testimony [sic] a competency determination based on written reports not stipulated into evidence was plain error to the prejudice of appellant's constitutional rights to confrontations and due process.

III.    Because it permits only a mandatory sentence of 15 years to life and removes all sentencing discretion from a trial court [sic] R.C. 2929.02(B)(1) violates the separation of powers doctrine and constitutional protections of due process and against cruel and unusual punishment.

IV.     Failures to move to suppress statements and to challenge the mandatory sentence denied the constitutional right to effective assistance of counsel.

(Doc. No. 12-1, Ex. 6.)  The State filed a brief in response.  (Doc. No. 12-1, Ex. 7.)  Meadows filed a reply.  (Doc. No. 12-1, Ex. 8.)

On September 30, 2013, the state appellate court affirmed Meadows' convictions.  (Doc. No. 12-1, Ex. 9.)  *See also State v. Meadows*, 2013 WL 5439847, at *1.

On October 10, 2013, Meadows, through counsel, filed a motion to reconsider the September 30, 2013 decision, as well as a motion to certify a conflict between the September 30, 2013 decision and a decision by the Court of Appeals for the Eleventh District.  (Doc. No. 12-1, Ex. 10, 11.)  On November 27, 2013, the state appellate court denied both motions.  (Doc. No. 12-1, Ex. 12, 13.)

On January 10, 2014, Meadows, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 12-1, Ex. 14.)  In his Memorandum in Support of Jurisdiction, Meadows raised the following Propositions of Law:

I       Arrest warrants must be based upon complaints that on their face support the showing required for probable cause determination. A complaint is sufficient when it indicates a source or basis by providing an affiant's answer to the hypothetical question "what makes you think the defendant committed the offense charges?"

        When an arrest warrant is not based upon the required showing of probable cause a basis exists to suppress any critical evidence obtained as a result of the arrest. If exclusion of that evidence would result in a reasonable probability the accused would not have been convicted, failure to file a suppression motion constitutes ineffective assistance of

4

counsel.

II.    In a murder prosecution when timely requests are made for jury charges as to lesser included offenses or inferior offenses which include the element of sudden passion the failure to give any of the requested charges is prejudicial error when undisputed facts show a reasonable basis for an accused to have been in fear for their life, because those same facts, viewed in a light most favorable to the accused, would support a jury determination of sudden passion.

(Doc. No. 12-1, Ex. 15.)  The State did not file a response.  (Doc. No. 12-1, Ex. 16.)

On March 26, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 12-1, Ex. 17.)

## C.    Post-Conviction Filings

On June 10, 2013, Meadows, *pro se*, filed a petition for post-conviction relief with the Summit County Court of Common Pleas.  (Doc. No. 12-1, Ex. 18.)  In his Memorandum of Support, Meadows raised the issue of ineffective assistance of counsel on the following grounds:

I.    Failure to properly investigate and subpoena potential defense witnesses.

II.    Failure to properly investigate Petitioner's mental state in order to ascertain whether Petitioner was competent to stand trial.

III.    Failure to adequately prepare Petitioner for his testimony at trial.

(*Id.*)  On July 8, 2013, the State filed a Motion to Dismiss *instanter*.  (Doc. No. 12-1, Ex. 19; Doc. No. 15-1.)

On July 22, 2013, the trial court denied Meadows's petition for post-conviction relief.  (Doc. No. 12-1, Ex. 20; Doc. No. 15-2.)  Meadows did not appeal the trial court's decision.  (*See* Doc. No. 12-1.)

**D.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On December 30, 2013, Meadows, through different counsel, filed an Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 12-1, Exh. 21; Doc. No. 15-3.)  Meadows's Application raised the following argument:

> I.      Appellant was denied the effective assistance of counsel and plain error occurred when his trial counsel failed to preserve error by objection to the trial court's failure to give jury instructions as to lesser included/inferior defenses of reckless and negligent homicide, and by appellate counsel's failure to claim those failures to charge constituted plain error.

(*Id.*)  The State did not file a response.  (*See* Doc. No. 12-1.)  On February 21, 2014, the state appellate court granted Meadows's application to reopen his appeal.  (Doc. No. 12-1, Ex. 22; Doc. No. 15-4.)

On May 12, 2014, Meadows filed his brief and raised the following assignments of error:

> I.      The trial court denied Meadows his Fourteenth Amendment due process rights when it denied Meadows' request to instruct the jury concerning the lesser-included offenses of reckless homicide and negligent homicide.
>
> II.     Meadows was denied the effective assistance of trial counsel guaranteed to him under the Sixth Amendment, mandating reversal of his conviction.
>
> III.    Meadows' murder conviction was not supported by sufficient evidence, and must be vacated.
>
> IV.     Meadows was denied the effective assistance of appellate counsel guaranteed him under the Sixth Amendment, mandating the vacation of this Court's previous decision.

(Doc. No. 12-1, Ex. 23; Doc. No. 15-5.)  The State filed a brief in opposition (Doc. No. 12-1, Ex. 24) , to which Meadows replied.  (Doc. No. 12-1, Ex. 25.)

On September 30, 2015, the state appellate court confirmed its prior judgment.  (Doc. No. 12-1, Ex. 26.)

6

On December 24, 2015,[3] Meadows, *pro se*, filed a notice of appeal and a motion for leave to file a delayed appeal of the state appellate court's September 30, 2015 decision on his reopened appeal.  (Doc. No. 12-1, Ex. 27, 28.)

On February 20, 2016, the Ohio Supreme Court denied Meadows's motion for delayed appeal and dismissed the case.  (Doc. No. 12-1, Ex. 29.)

E.     **Federal Habeas Petition**

On December 8, 2016,[4] the Court received Meadows's Petition for Writ of Habeas Corpus, which asserted the following grounds for relief:

> **GROUND ONE**:
>
>> **Supporting Facts**:  The judge and my lawyer both said that it was not enough evidence to charge me with murder. Because I told them the truth and I had my family, backing me up on what happen that day.
>
> **GROUND TWO**:
>
>> **Supporting Facts**:  Counsel didn't conduct a reasonable investigation into the cause nor did the police do an investigation.

(Doc. 1-1; Doc. No. 4.)

On August 16, 2018, Warden Ed Sheldon ("Respondent") filed his Return of Writ. (Doc. No. 12.) Meadows filed an "objection as a matter of law" to Respondent's return of the writ but did not file a Traverse.  (Doc. No. 13.)

---

[3] The notice of appeal and motion for leave to file a delayed appeal are also stamped "Received December 1, 2015."  (Doc. No. 12-1, Ex. 27, 28.)  The filings were returned to Meadows on December 2, 2015, as they did not comply with the Ohio Supreme Court's Rules of Practice.  (Doc. No. 12-1, Ex. 28.)

[4]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  However, Meadows's Petition is undated and the declaration for when the Petition was placed in the prison mailing system was left blank.  (Doc. No. 1-1 at 13; Doc. No. 4 at 13.)  His motion to proceed *in forma pauperis*, also filed December 8, 2016, is dated December 1, 2016, while his affidavit of indigency was notarized on December 2, 2016.  (Doc. No. 1.)

### III. Statute of Limitations

**A.      One-Year Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, Meadows was sentenced on June 15, 2012 and timely appealed on July 18, 2012. (Doc. No. 12-1, Ex. 4, 5, 6.) On June 10, 2013, Meadows filed a petition for post-conviction relief. (Doc. No. 12-1, Ex. 18.) On July 22, 2013, the trial court denied Meadows's petition. (Doc. No. 12-1, Ex. 20; Doc. No. 15-2.) Meadows did not appeal the trial court's decision. (*See* Doc. No. 12-1.)

On September 30, 2013, the state appellate court affirmed Meadows's convictions. (Doc. No. 12-1, Ex. 9.) On October 10, 2013, Meadows filed a motion reconsider and a motion to certify a conflict with the state appellate court. (Doc. No. 12-1, Ex. 10, 11.) On November 27, 2013, the state appellate court denied both motions. (Doc. No. 12-1, Ex. 12, 13.)

On December 30, 2013, Meadows filed an application to reopen appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 12-1, Ex. 21; Doc. No. 15-3.)

On January 10, 2014, Meadows filed a Notice of Appeal with the Supreme Court of Ohio regarding the state appellate court's September 30, 2013 decision.  (Doc. No. 12-1, Ex. 14.)

On February 21, 2014, the state appellate court granted Meadows's application to reopen his appeal.  (Doc. No. 12-1, Ex. 22; Doc. No. 15-4.)

On March 26, 2014, the Ohio Supreme Court declined to accept jurisdiction of Meadows's appeal of the state appellate court's September 30, 2013 decision.  (Doc. No. 12-1, Ex. 17.)

On September 30, 2015, the state appellate court issued its decision on Meadows's reopened appeal pursuant to Ohio App. R. 26(B) and confirmed its prior judgment.  (Doc. No. 12-1, Ex. 26.) Meadows did not timely appeal this decision to the Ohio Supreme Court.  (Doc. No. 12-1, Ex. 27, 28.)

Based on this sequence of events, Respondent argues Meadows's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on November 16, 2015, forty-five (45) days after the state appellate court issued its decision confirming its judgment and the time to file a timely notice of appeal with the Supreme Court of Ohio expired.[5]  (Doc. No. 12 at 12.)  Respondent asserts, "The time between November 16, 2015, and December 8, 2016, is 388 days or well beyond the statute of limitations."  (*Id.*)

Meadows does not challenge Respondent's assertion that § 2244(d)(1)(A) is the applicable provision or that his Petition is untimely thereunder.  (Doc. No. 13.)  Thus, the Court finds Meadows's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on November 16, 2015, forty-five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a

---

[5] Forty-five days from September 30, 2015 is Saturday, November 14, 2015.  The deadline would be the next business day, or Monday, November 16, 2015.    Ohio S.Ct.Prac.R.  3.03(A)(1).  Section 2244(d)(1)(A)'s clock began to run the next day – November 17, 2015.  *Wilberger v. Carter*, 35 F. App'x 111, 115 (6th Cir. 2002) (citing Fed. R. Civ. P. 6).

timely notice of appeal with the Supreme Court of Ohio expired.  Accordingly, the Court finds the limitations period commenced on November 17, 2015 and, absent tolling, expired one year later on November 15, 2016.

      As Respondent correctly notes, however, the AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).  "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law."  *Id.*

      Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)."  *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S. Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009).  A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).  Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman*, 346 F.3d at 602 (citation omitted).  Further, if a state court ultimately denies a petition as

untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

While Meadows filed a motion for delayed appeal of the state appellate court's decision on his reopened appeal, the Ohio Supreme Court's rules of practice disallow motions for delayed appeals where the appeal is brought pursuant to App. R. 26(B).  S.Ct.Prac.R. 7.01(A)(4)(c).[6]  The Ohio Supreme Court summarily denied the motion for delayed appeal.  (Doc. No. 12-1, Ex. 29.)  The Ohio Supreme Court's summary denial of a motion for delayed appeal is presumed to be a procedural ruling sufficient to bar federal habeas review.  *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (*per curiam*).

Because Meadows's motion for delayed appeal was denied as untimely, the Court finds it was not "properly filed" for purposes of § 2244(d)(2).  As the Supreme Court has explained, an application is "properly filed" when its delivery and acceptance by the state court comply with state laws and rules governing filings.  *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Pace*, 544 U.S. at 414-17; *Allen*, 552 U.S. at 7.  *See also Vroman*, 346 F.3d at 603.  Such requirements generally pertain to the form of the document, the time limits for its delivery, the appropriate filing court, or the filing fee.  *Artuz*, 531 U.S. at 8.  The state courts are the arbiters of the state's time rules.  *See Vroman*, 346 F.3d at 603; *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001).  Consequently, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Allen*, 552 U.S. at 7 (quoting *Pace*, 544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002) (alteration in original)).  Therefore, Meadows's motion for delayed appeal did not toll AEDPA's statute of limitations.

---

[6] The rules instruct that the Clerk of Court "shall refuse to file motions for delayed appeal involving postconviction relief or App. R. 26(B)."  S.Ct.Prac.R. 7.01(A)(4)(c).  While the Clerk of Court filed Meadows's motion, the face of his motion only references S.Ct.Prac.R. 7.01(A)(4)(a) and does not mention App. R. 26(B).  (Doc. No. 12-1, Ex. 28.)

The statute of limitations under § 2244(d)(1)(A) expired on November 15, 2016.  The Court did not receive Meadows's habeas petition until December 8, 2016.  (Doc. No. 1.)  Even assuming Meadows placed his habeas petition in the prison mail system on December 2, 2016, the date his affidavit of indigency was notarized (and Meadows provides no affidavit or declaration to say that he did so), his habeas petition was still 17 days late.  Therefore, unless equitable tolling is appropriate, Meadows's Petition should be dismissed as time-barred.

**B.**     **Equitable Tolling**

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011) (quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Holland,* 130 S.Ct. at 2565.  *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence."  *Holland*, 130 S.Ct. at 2565.  That being said, the Sixth Circuit has held that excessive delays in filing lack

12

appropriate diligence.  *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst.*, 620 Fed. Appx. 417, 419 (6th Cir. 2015).

Respondent argues Meadows is not entitled to equitable tolling as "Meadows' habeas grounds are trial-related; and, as in *Hall*, he clearly knew what took place at this trial and what his grounds for relief were going to be."  (Doc. No. 12 at 13) (citing *Hall*, 662 F.3d 745).  In addition, Meadows's "[p]*ro se* status and limited law-library access do not change this result absent unusual circumstances not present here."  (*Id.* at 12-13) (citing *Hall*, 662 F.3d at 751-52).

Meadows does not argue that he is entitled to equitable tolling.  (Doc. No. 1-1; Doc. No. 4; Doc. No. 13.)  Even if he had raised the issue of equitable tolling, the Court would have serious doubts as to whether he exercised sufficient diligence under the circumstances.  In his state court filings, Meadows stated: (1) he did not receive a letter from his lawyer regarding the state appellate court's September 30, 2015 decision on his App. R. 26(B) appeal until October 9, 2015 (dated October 6, 2015);[7] (2) the Mansfield Correctional Institution was on lockdown from October 18-20, 2015 and on no movement for a week after that; (3) the reason for the lockdown was an inmate took an employee hostage in the library department, causing a lot of damage to the library and closing it until further notice; (4) Mansfield Correctional Institution had to open a temporary library location (which was open as of the filing of his motion for delayed appeal); and (5) he did not receive his first legal law library pass until November 20,

---

[7] The Sixth Circuit has found that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant" equitable tolling.  *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)).  However, Meadows's lawyer's letter regarding the state appellate court's decision was dated one week after the decision, and he received the letter three days after that.

13

2015. (Doc. No. 12-1, Ex. 28.) But Meadows admits he received notification from his lawyer on October 9, 2015. (*Id.*) The record does not contain any communication between Meadows and prison officials about his deadline and/or his need to access the law library before or after the lockdown or the no movement restriction. Further, there was at least a two-week gap between the lifting of the no movement restriction and Meadows's deadline to file his appeal with the Ohio Supreme Court. Finally, while the reasons presented in his state filings may go to the reason his appeal to the Ohio Supreme Court was delayed, they do not explain why his habeas petition was filed late.

Thus, and for all the reasons set forth above, the Court finds Meadows failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing the instant Petition. Therefore, the Court finds equitable tolling is not warranted in this case.

## C.    Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329). In making this assessment, "'the timing of the [petition]' is a

14

factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id*. (quoting *Schlup*, 513 U.S. at 332).

Although Meadows's Petition raises a sufficiency of the evidence argument regarding his murder conviction, Meadows does not identify any "new, reliable evidence" of his actual innocence "that was not presented at trial." *Schlup*, 513 U.S. at 324.  Accordingly, the Court finds Meadows has not demonstrated he is entitled to the actual innocence exception.

### IV. Exhaustion and Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.   *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with

the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[8]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.   The exhaustion requirement of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims

---

[8] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review; and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62

17

(6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F.  Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 Fed. App'x 473, 480 (6th Cir. Aug. 29, 2012).

**B.    Application to Petitioner**

**1.    Ground One**

Respondent argues Ground One is procedurally defaulted as it "was never fairly presented on direct appeal where it normally should be presented, and in any event there are no issues that survive direct appeal."  (Doc. No. 12 at 17.)  Further, Respondent asserts, "It goes without elaborate argument that the underlying assignments of error set out in an Application to reopen premised on ineffective assistance of counsel do not preserve those underlying assignments of error for independent review . . . Thus the third assignment of error in Meadows' Application to reopen does not revive the issue of insufficiency of evidence."  (*Id.* at 18.)  Because Meadows did not file a Traverse, he has not directly addressed Respondent's arguments regarding procedural default.

18

Based upon the principles set forth in IV.A., *supra*, the Court finds Ground One of Meadows's federal habeas petition is procedurally defaulted.  While Respondent correctly notes Meadows did not raise a sufficiency of the argument claim on direct appeal, he did raise it in his brief in his 26(B) appeal and it was not based on ineffective assistance of counsel.[9]  (Doc. No. 12-1, Ex. 23; Doc. No. 15-5.)  On September 30, 2015, the state appellate court issued its decision on Meadows's reopened appeal pursuant to Ohio App. R. 26(B) and confirmed its prior judgment.  (Doc. No. 12-1, Ex. 26.)  Thereafter, Meadows had forty-five days, or until November 16, 2015, to appeal to the Supreme Court of Ohio, but failed to do so.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).  Instead, Meadows filed a motion for delayed appeal of the state appellate court's decision on his reopened appeal on December 24, 2015.  (Doc. No. 12-1, Ex. 28.)  The Supreme Court of Ohio denied this motion and dismissed the matter on February 10, 2016.  (Doc. No. 12-1, Ex. 29.)

The Court finds Meadows's failure to timely appeal to the Supreme Court of Ohio, in conjunction with that court's denial of his Motion for Delayed Appeal, resulted in procedural default.  *See Bonilla*, 370 F.3d at 497 (holding an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar).  Therefore, absent a showing of cause and prejudice, Ground One should be dismissed.

### a.    Cause and Prejudice

Meadows may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren,* 440 F.3d at 763.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule,

---

[9] The state appellate court considered Meadows's sufficiency of the evidence argument on the merits. (Doc. No. 12-1, Ex. 26).

*Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Because Meadows did not file a Traverse, he did not provide any response to Respondent's arguments regarding procedural default.  In his state court filings, Meadows stated: (1) he did not receive a letter from his lawyer regarding the state appellate court's September 30, 2015 decision on his App. R. 26(B) appeal until October 9, 2015 (dated October 6, 2015); (2) the Mansfield Correctional Institution was on lockdown from October 18-20, 2015 and on no movement for a week after that; (3) the reason for the lockdown was an inmate took an employee hostage in the library department, causing a lot of damage to the library and closing it until further notice; (4) Mansfield Correctional Institution had to open a temporary library location that was open as of the filing of his motion for delayed appeal; and (5) he did not receive his first legal law library pass until November 20, 2015.  (Doc. No. 12-1, Ex. 28.)

While the ineffective assistance of counsel can normally provide cause to excuse procedural default, "attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal."  *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio Dec. 13, 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 751-53 (1991)).  Here, Meadows had no constitutional right to counsel on a discretionary appeal to the Supreme Court of Ohio.  *Tanner v. Jeffreys*, 516 F. Supp. 2d 909, 916 (N.D. Ohio Oct. 19, 2007) ("The constitutional right to appointed counsel extends to the first appeal of right and no further.") (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).[10]  Thus, any purported failure of his attorney to appeal to the Supreme Court of Ohio cannot serve as cause to excuse the procedural default.

---

[10] In addition, Meadows's 26(b) appeal is a collateral post-conviction proceeding, during which he also has no constitutional right to counsel.  *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005).

20

The failure of an appellate counsel to timely inform a petitioner of a state appellate court decision can constitute ineffective assistance of counsel. *Smith v. State of Ohio Dept.of Rehab and Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) ("counsel has a duty to inform the accused of the resolution in a proceeding in a timely fashion so that the accused retains his control over the decision to appeal.")  However, ineffective assistance of counsel can only serve as cause to excuse procedural default if the underlying claim of ineffective assistance of counsel is not itself defaulted. *See Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).  Here, Meadows did not present a claim of ineffective assistance of counsel based on appellate counsel's alleged failure to inform him timely of the state appellate court's decision on his 26(B) appeal in state court, and the time to do so has now expired.[11]  Thus, any suggestion that ineffective assistance of counsel provides cause to excuse the default of these claims is without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

Nor are the other grounds raised in Meadows's state filings sufficient to excuse the default of Ground One.  As discussed *supra*, Meadows admits he received notification from his lawyer on October 9, 2015, well in advance of his November 16, 2015 appeal deadline.  (Doc. No. 12-1, Ex. 28.)  The record does not contain any communication between Meadows and prison officials about his deadline and/or his

---

[11] Under Ohio App. R. 26(B), an application for reopening must be filed with the state appellate court within 90 days of the journalization of the appellate court's decision, unless "the applicant shows good cause for filing at a later time."  Ohio App. R. 26(B)(1).  But the Supreme Court of Ohio has routinely enforced the 90-day deadline set in 26(B), finding it a reasonable procedural requirement. *State v. Gumm*, 814 N.E.2d 861 (2004); *see also, State v. Lamar*, 812 N.E.2d 970 (2004).  Further, Meadows filed a 26(B) application after the trial court denied his post-conviction petition, and Meadows only raised trial counsel's failure regarding jury instructions as grounds for ineffective assistance of counsel.  (Doc. No. 12-1, Ex. 23; Doc. No. 15-5.)  Thus, the Court finds "any attempted return to state court with the ineffective assistance of appellate counsel claim would be futile." *Rice v. Welch*, 2014 WL 4794585, *26 (N.D. Ohio Sept. 23, 2014) (finding an ineffective assistance of appellate counsel claim to be procedural defaulted where a petitioner did not file a Rule 26(B) application and did not provide any reason for his failure to do so).

need to access the law library before or after the lockdown or the no movement restriction.  Further, there was at least a two-week gap between the lifting of the no movement restriction and Meadows's deadline to file his appeal with the Supreme Court of Ohio.

Accordingly, and for all the reasons set forth above, the Court finds Meadows has failed to establish cause and prejudice to excuse the procedural default of Ground One.

### b.    Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Meadows does not point to any new, reliable evidence of his innocence.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended Ground One of Meadows's habeas petition be DISMISSED as procedurally defaulted.

22

2.      **Ground Two**

Respondent argues Ground Two is procedurally defaulted because Meadows presented this argument in his post-conviction petition but did not appeal the denial of his petition by the Ohio Court of Common Pleas.  (Doc. No. 12 at 18.)  Respondent maintains Meadows is unable to establish cause, prejudice, or miscarriage of justice in order to overcome the procedural default.  (*Id.* at 18-20.)

The Court agrees Ground Two of Meadows's federal habeas petition is procedurally defaulted.  A review of the record confirms Meadows did not appeal the denial of his post-conviction petition to the state appellate court, and there is nothing in the Petition suggesting a state court remedy would be available[12] to Meadows, at this late date, to raise this ground for relief.  *See Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").  Thus, the Court finds Ground Two is procedurally defaulted.

Moreover, Meadows is unable to establish cause and prejudice to excuse the procedural default of Ground Two.  Meadows cannot rely on ineffective assistance of appellate counsel as cause because he filed the post-conviction *pro se* and, moreover, he had no constitutional right to counsel on collateral review.  *Pennsylvania v. Finley*, 481 U.S. at 555.  As noted *supra*, Meadows does not provide any new, reliable evidence which was not presented at trial.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

---

[12] *See* n.11, *supra*.

## V.    Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED as time-barred or, in the alternative, as procedurally defaulted.

Date:  January 2, 2020                                    *s/ Jonathan Greenberg*
                                                         Jonathan D. Greenberg
                                                         United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

24